1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JAYSON FRYE,

                                    Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                                    Defendant.

3:14-cv-00523-MMD-VPC

**REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE**

        This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is plaintiff's motion for remand (#13), defendant's cross-motion to affirm and opposition (#s 15/16), and plaintiff's reply (#19).  For the reasons set forth herein, the court recommends that plaintiff's motion be granted, and defendant's cross-motion be denied.

## I.        FACTUAL AND PROCEDURAL BACKGROUND

        On May 9, 2013, Jayson Frye ("plaintiff") protectively filed a claim for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act, alleging a disability onset date of December 15, 2012.  (Administrative Record ("AR") 160–61.)  The Social Security Administration denied plaintiff benefits in the first instance on August 9, 2013, and upon reconsideration on November 15, 2013.  (*Id.* at 91, 95.)  On April 1, 2014, plaintiff and his attorney appeared at a hearing before Administrative Law Judge ("ALJ") Eileen Burlinson.  (*Id.* at 26–56.)  The ALJ issued a written decision on April 7, 2014, finding that plaintiff had not been disabled at any time between December 15, 2012 and the date of the decision.  (*Id.* at 9–18.)  Plaintiff appealed, and the Appeals Council denied review on August 27, 2014.  (*Id.* at 1.)  Accordingly, the ALJ's decision became the final decision of the Commissioner ("defendant").

        Having exhausted all administrative remedies, plaintiff filed a complaint for judicial review on October 9, 2014 (#1).  In his motion for remand, plaintiff contends that the ALJ

inadequately supported her step two findings regarding the severity of plaintiff's mental and physical impairments (#13 at 16–17); failed to consider the side effects of plaintiff's medication in determining his residual functional capacity ("RFC") (*id.* at 17–18); improperly rejected the opinion of Dr. Vandanna Peddu, plaintiff's treating psychiatrist (*id.* at 11–15); and posed an inadequate question to the vocational expert (*id.* at 14–15).

## II.    STANDARD OF REVIEW

The initial burden of proof to establish disability in a claim for SSDI benefits rests upon the claimant. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To satisfy this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

This court has jurisdiction to review an ALJ's decision to deny a claim for benefits after the claimant has exhausted all administrative remedies. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161–62 (9th Cir. 2012). The court must affirm the ALJ's decision unless it rests on legal error or is unsupported by substantial evidence in the administrative record. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). The substantial evidence standard is not onerous. It is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

Although the ALJ need not discuss every piece of evidence in the record, she cannot ignore or omit evidence that is significant or probative. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012). The ALJ's discussion must adequately explain the decision in light of such evidence. "The ALJ, not the district court, is required to provide specific reasons for rejecting [the evidence.]" *Stout v. Comm'r, Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006) (specifically discussing rejection of lay testimony). The district court's review is thus constrained to the reasons asserted by the ALJ. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

1      To determine whether substantial evidence exists, the court must look at the record as a

2  whole, considering both evidence that supports and undermines the ALJ's decision; it "may not

3  affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec.*

4  *Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation omitted).  Where "the evidence is

5  susceptible of more than one rational interpretation, the decision of the ALJ must be upheld."

6  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (internal quotation omitted).  The ALJ alone is

7  responsible for determining credibility and resolving ambiguities.  *Garrison*, 759 F.3d at 1010.

### III.    DISCUSSION

**A.    SSDI claims are evaluated under a five-step sequential process.**

10      The Commissioner follows a five-step sequential process for determining whether a

11  claimant is "disabled" for the purposes of SSDI.  20 C.F.R. § 404.1520(a)(4); *see also Barnhart v.*

12  *Thomas*, 540 U.S. 20, 24 (2003).  Step one directs the ALJ to determine whether the claimant is

13  engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not

14  disabled and the Commissioner denies the claim.  *Id.* § 404.1520(b).

15      The second step requires the ALJ to determine whether the claimant's medically

16  determinable impairment is "severe."  *Id.* § 404.1520(a)(4)(ii).  "Severe" impairments are those

17  that significantly limit the claimant's physical or mental ability to do basic work activities.  *Id.* §

18  404.1520(c).  The Commissioner will deny the claim if the claimant lacks a severe impairment or

19  combination of impairments.  *Id.*

20      At step three, the claimant's impairment is compared to the impairments listed in the

21  Agency's regulations.  *Id.* § 404.1520(a)(4)(iii); *see also id.* Pt. 404, Subpt. P, App. 1 ("List of

22  Impairments").  The List of Impairments "define[s] impairments that would prevent an adult,

23  regardless of his age, education, or work experience, from performing *any* gainful activity, not

24  just substantial gainful activity."  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal quotation

25  omitted).  Where the claimant's impairment is on the list, or is equivalent to a listed impairment,

26  and the claimant also meets the corresponding durational requirement, the claimant is deemed

27  disabled.  20 C.F.R. § 404.1520(d). However, for an impairment to match a listing, "it must meet

28

1    *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no

2    matter how severely, does not qualify."  *Zebley*, 493 U.S. at 530 (emphasis in original).

3        If the Commissioner does not find disability at step three, review of the claim proceeds to

4    step four.  There, the ALJ considers whether the claimant can perform past relevant work despite

5    the severe impairment.  20 C.F.R. § 404.1520(a)(4)(iv).  If so, the claimant is not disabled.  *Id.* §

6    404.1520(e).  The ALJ will find that the claimant can return to past relevant work if he or she can

7    perform the "actual functional demands and job duties of a particular past relevant job" or the

8    "functional demands and job duties of the [past] occupation as generally required by employers

9    throughout the national economy."  *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001)

10   (internal quotation omitted).

11       In making the step four determination, the ALJ considers the claimant's RFC and the

12   physical and mental demands of the work previously performed.  20 C.F.R. § 404.1520(f); *see

13   also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).  The RFC is the most the claimant can

14   still do despite his or her limitations.  20 C.F.R. § 404.1545(a)(1).  In evaluating the claimant's

15   RFC, the ALJ must assess all of the evidence, including medical reports and descriptions by the

16   claimant and others of the claimant's relevant limitations.  *See id.* § 404.1545(a)(3).

17       The ALJ is not, however, required to accept as true every allegation the claimant offers

18   regarding his or her limitations.  *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007).  The ALJ must

19   follow a two-step inquiry where the claimant alleges subjective pain or symptoms.  *Lingenfelter

20   v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007); *see also* SSR 96-7p, 61 Fed. Reg. 34483 (July

21   2, 1996).  First, the ALJ determines "whether the claimant has presented objective medical

22   evidence of an underlying impairment which could reasonably be expected to produce the pain or

23   other symptoms alleged."  *Lingenfelter*, 504 F.3d at 1036 (internal quotation omitted).  Second,

24   where the first test is met and no evidence suggests that the claimant is a malingerer, the ALJ may

25   reject the claimant's allegations only by articulating "clear and convincing" reasons for doing so.

26   *Id.*

27       The "clear and convincing" standard is the most demanding standard in Social Security

28   case law, *Garrison*, 759 F.3d at 1015, and it requires the ALJ to "specifically identify the

4

testimony she or he finds not to be credible and [to] explain what evidence undermines the testimony," *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). The ALJ must therefore cite to the record and discuss specific evidence therein. *See Vasquez v. Astrue*, 572 F.3d 586, 591–92, 592 n.1 (9th Cir. 2008); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). "[S]imply reciting the medical evidence in support of his or her [RFC] determination" will not suffice. *Brown-Hunter v. Colvin*, 798 F.3d 749, 755 (9th Cir. 2015). The focus, however, is ultimately upon the reviewing court. The credibility determination must be "'sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.'" *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (quoting *Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001)).

Permissible bases for finding the claimant not credible include conflicts between the allegations and the claimant's daily activities, *Orn*, 495 F.3d at 636, an "unexplained or inadequately explained failure to seek treatment," *Molina*, 674 F.3d at 1112, and a lack of objective medical evidence, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain [and limitations] testimony, it is a factor that the ALJ can consider in his [or her] credibility analysis."). Medical opinions are also probative evidence when weighing the credibility of subjective complaints. 20 C.F.R. § 404.1529(c) (describing factors relevant to credibility); *see also Rollins*, 261 F.3d at 857 (noting that the ALJ appropriately considered medical opinions contradicting claimant's pain testimony in assessing claimant's credibility).

If step four demonstrates that the claimant cannot do the work he or she did in the past, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform jobs available in the national economy. 20 C.F.R. § 404.1560(c). There, the ALJ must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). The ALJ will typically reference "the grids," under which a finding of disability may be directed, and also consider the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). Where the grids do not direct a finding of disability,

the ALJ must identify other occupations that the claimant can perform and which are available in significant numbers in the claimant's region or in several regions of the United States. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c). If the ALJ establishes that the claimant's RFC and transferable skills allow him or her to perform other occupations, he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the ALJ concludes that the claimant cannot adjust to any other work, he or she is disabled and entitled to benefits. *Id.* § 404.1520(g).

**B.     The ALJ followed the five-step process and concluded that plaintiff was not disabled.**

In reviewing plaintiff's claim, the ALJ followed the five-step process described above. The ALJ first determined that plaintiff had not engaged in substantial gainful activity since December 15, 2012, the alleged onset date. (AR 11.) Plaintiff suffered from "chronic left shoulder pain secondary to partial thickness tear of supraspinatus/impingement syndrome; minimal degenerative disc disease of the lumbar spine; obesity; an adjustment disorder; and post-traumatic stress disorder ("PTSD"),"  each of which were found to be severe at step two. (*Id.*) However, the ALJ concluded that none of the impairments met or medically equaled a listed impairment; thus, a finding of disability was not directed at step three. (*Id.* at 11–12.)

The ALJ proceeded to step four and made several findings. To begin, the ALJ concluded that plaintiff's RFC would permit him to perform light work as defined by 20 C.F.R. § 404.1567(b), except that plaintiff would be limited to occasional postural movements and no more than frequent overhead use of his left upper extremity. (*Id.* at 12.) In addition, plaintiff would require a low-stress work environment with a production rate not to exceed eighty percent and no more than occasional contact with the public, co-workers, or supervisors. (*Id.*) Next, the ALJ found that plaintiff's impairments could be expected to cause his alleged symptoms, but that his statements regarding the intensity, persistence, and limiting effects of his symptoms were not fully credible. (*Id.* at 13.) In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, medical opinions, clinical findings, and a statement submitted by plaintiff's spouse. (*Id.* at 13–16.) Finally, the ALJ determined that plaintiff's RFC prevented him from returning to any of his past relevant work. (*Id.* at 16.)

The ALJ proceeded to step five and found that the grids did not direct a finding of disability. (*Id.* at 16–17.) Relying on the testimony of a vocational expert, the ALJ then determined that plaintiff's age, education, work experience, and RFC would allow him to perform three representative occupations existing in significant numbers in the national economy: a hand packer, a folder, and an inventory clerk. (*Id.* at 17.) Accordingly, the ALJ held that plaintiff was not disabled and denied his SSDI claim. (*Id.* at 17–18.)

**C.    The ALJ properly evaluated the severity of plaintiff's mental and physical impairments.**

At step two of the five-step inquiry, the ALJ found that plaintiff suffered from two severe mental impairments: adjustment disorder and PTSD. (*Id.* at 11.) Plaintiff does not challenge the ALJ's step-two conclusion, but nevertheless argues that remand is required because the ALJ's "bare findings" do not satisfy the standards proscribed by 20 C.F.R. § 404.1520a and *Keyser v. Commissioner of Social Security*, 648 F.3d 721 (9th Cir. 2011). (#13 at 17.) The court disagrees.

Pursuant to 20 C.F.R. § 404.1520a, ALJs use a special psychiatric review technique to evaluate the severity of a claimant's mental impairments. The technique requires the ALJ to rate the degree of the claimant's functional limitation in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). If, applying the psychiatric review technique, the ALJ rates a claimant's degree of limitation as "none" or "mild" in the first three areas, and "none" in the fourth area, the ALJ will find that the claimant's mental impairment is not severe. 20 C.F.R. § 404.1520a(d)(1). If, however, the impairment is severe, the ALJ will proceed to step three to consider whether it meets or medically equals the mental disorders on the List of Impairments. *Id.* § 404.1520a(d)(2).

As explained in *Keyser*, the ALJ must document his or her conclusions by completing and appending a Psychiatric Review Technique Form ("PRTF") to the written decision, or by incorporating the PRTF's "mode of analysis" into the findings and conclusions. *Keyser*, 648 F.3d at 726. The failure to do so is reversible error. *Id.* Plaintiff's argument, however, exaggerates the extent of this requirement. In *Keyser*, the Ninth Circuit rejected an ALJ decision that "did not

1  document the ALJ's application of the technique and did not include a specific finding of

2  limitation in any of the functional areas.  The decision simply referenced and adopted the PRTF

3  completed earlier by [the state agency medical consultant]."  *Keyser*, 648 F.3d at 726.  As the

4  medical consultant had concluded that the claimant's impairment was not severe, the ALJ had

5  also failed to consider whether the impairment met or equaled a listed impairment at step three.

6  *Id.* at 727.  Here, in contrast, the ALJ resolved step two in plaintiff's favor and found that his

7  adjustment disorder and PTSD were severe.  (AR 11.)  In addition, the ALJ made explicit

8  findings as to the four functional areas identified in § 404.1520a.  At step three, the ALJ stated

9  that plaintiff's "mental impairments, considered singly and in combination, do not meet or

10  medically equal the criteria of listings 12.04 or 12.06."  (*Id.*)  In reaching her conclusion, she

11  found that plaintiff had no more than mild restrictions in activities of daily living; had no more

12  than moderate difficulties with social functioning; had no more than moderate difficulties with

13  concentration, persistence, or pace; and  had not experienced any episodes of decompensation of

14  extended duration.  (*Id.* at 12.)  The ALJ was not required to be more specific, *Hoopai v. Astrue*,

15  499 F.3d 1071, 1078 (9th Cir. 2007), nor was it error to discuss plaintiff's functional limitations

16  at step three rather than step two, *see Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001).

17       As if as an afterthought, plaintiff also contends that the ALJ's step-two findings are

18  inadequate because "she included no consideration of plaintiff's physical impairments, discussing

19  only the mental impairments.  There is therefore no way to know whether she actually considered

20  plaintiff's physical impairments in combination with his mental impairments, leading to error at

21  Step 3, where no meaningful consideration of equivalence to a Listing could have been made."

22  (#13 at 17.)  Plaintiff's argument only makes sense if the ALJ's finding of severity is read in

23  isolation, as she thoroughly discussed the evidence regarding plaintiff's mental and physical

24  impairments elsewhere in the decision.  The ALJ was not required to state why plaintiff failed to

25  satisfy "every different section of the listing of impairments," *Gonzalez v. Sullivan*, 914 F.2d

26  1197, 1201 (9th Cir. 1990), or to discuss the supporting evidence in under a specific heading,

27  *Lewis*, 236 F.3d at 513.  Moreover, nothing in the record suggests that plaintiff offered a theory in

28  support of equivalence.  "An ALJ is not required to discuss the combined effects of a claimant's

8

impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683. Based on the foregoing, the court concludes that the ALJ did not err at step two regarding plaintiff's mental or physical impairments.

**D.      The ALJ adequately considered the side effects of plaintiff's medications.**

Plaintiff is prescribed several pain and psychiatric medications, the side effects of which allegedly include headaches, nausea, dizziness, vertigo, drowsiness, lethargy, and confusion. (#13 at 17–18.)  Plaintiff claims that the ALJ failed to consider these adverse effects when formulating plaintiff's RFC, "including no discussion of side effects in her rationale, and including no limitations which may reasonably be related to medication side effects." (*Id.* at 18.) The "type, dosage, effectiveness, and side effects" of a claimant's medications is one factor an ALJ must consider when assessing the credibility of a claimant's pain and symptoms testimony. SSR 96-7p, 61 Fed. Reg. 34483.

Plaintiff's argument is groundless. As a preliminary matter, the ALJ clearly summarized plaintiff's alleged symptoms, including those that plaintiff alleges are missing, in the fourth paragraph following her RFC determination:

> He asserted his impairments caused him to experience anger issues, isolative tendencies, difficulties around crowds, paranoia, difficulty sleeping/nightmares, hallucinations, *severe headaches, nausea, blurry vision*, and pain in his lower back, hips, and left shoulder. *He also asserted his pain medication caused side effects "such as" dizziness, drowsiness, vertigo, fatigue, and tremors.* Regarding functional limitations, he reported problems with lifting, standing, walking, sitting, bending, reaching, squatting, kneeling, memory, concentration, competing tasks, and getting along with others.

(AR 13 (internal citations omitted) (emphasis added).)

In addition, the only evidence plaintiff cites regarding the side effects he has experienced is his hearing testimony and his disability application. (#13 at 17–18.)  An ALJ may properly reject a claimant's pain and symptoms testimony by "using ordinary techniques of credibility evaluation and providing a specific, clear and convincing reason, supported by the record, that [his or] her testimony was not generally credible." *Thomas*, 278 F.3d at 960 (internal quotation omitted). Upon consideration of the evidence, the ALJ found plaintiff's statements regarding the

1    above symptoms to be "not fully credible." (AR 13.) Plaintiff does not challenge the ALJ's

2    credibility assessment. Without objective medical evidence that the alleged side effects impeded

3    plaintiff's ability to work, and having found plaintiff not fully credible, there was no reason for

4    the ALJ to include limitations related to plaintiff's medications in his RFC. *See Thomas*, 278

5    F.3d at 960; *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984) (noting that an ALJ can

6    reject a claimant's "self-serving statements" where they are unsupported by objective evidence).

7    **E.    The ALJ permissibly rejected Dr. Peddu's medical opinion.**

8          Plaintiff next maintains that the ALJ improperly rejected the medical opinion of by

9    plaintiff's treating physician, Dr. Peddu. (#13 at 12.) In September 2013, Dr. Peddu completed a

10   medical source statement opining that plaintiff experienced "marked or extreme limitations in

11   almost every area of mental functioning related to concentration, social interaction, and

12   adaptation," and assigning him Global Assessment of Functioning ("GAF") score of fifty. (AR

13   15, 236–39.) The ALJ accorded the opinion "no weight," citing: (1) inconsistency with plaintiff's

14   "limited and unremarkable mental health treatment records from the VA;" (2) inconsistency with

15   the consultative psychological examination; and (3) the extreme level of limitations Dr. Peddu

16   identified, which "appeared to be based entirely on [plaintiff's] subjective reporting of symptoms

17   signed by the provider." (*Id.* at 15.) Plaintiff argues that his health treatment records and the

18   consultative examination do in fact support Dr. Peddu's opinion, and suggests that the ALJ

19   should have recontacted Dr. Peddu if she was unclear on the basis for her opinion. (#13 at 13–

20   14.) Defendant counters that the reasons the ALJ cited are legally sufficient and supported by the

21   record. (#15 at 5–6.)

22         An ALJ may consider medical opinions from three types of physicians: treating,

23   examining, and non-examining. *Garrison*, 759 F.3d at 1012. As a general rule, the opinion of a

24   treating physician is given more weight than that of an examining physician, and the opinion of

25   an examining physician is given more weight than that of a non-examining physician. *Id.* The

26   opinion of a treating physician is particularly persuasive because the continuity of care enhances

27   his or her ability to fully and accurately assess the claimant's medical problems. *Embrey v.*

28   *Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988). Where the treating physician's opinion is "well-

1   supported by medically acceptable clinical and laboratory diagnostic techniques and is not

2   inconsistent with the other substantial evidence in [a claimant's] case record," it will be given

3   controlling weight. 20 C.F.R. § 404.1527(c)(2); *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir.

4   2014).

5         Where controlling weight is not warranted, the ALJ must determine how much weight to

6   assign the opinion by applying the factors set out in 20 C.F.R. § 404.1527(c)(2)–(6), which

7   include the nature, length, and extent of the treatment relationship; consistency with and support

8   from the record as a whole; and the expertise of the treating physician. *Orn*, 495 at 632. "Clear

9   and convincing" reasons must be given to reject a treating physician's uncontradicted opinion.

10   *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008).   If a treating

11   physician's opinion is contradicted, the ALJ may disregard it by providing "specific and

12   legitimate reasons" supported by substantial evidence in the record. *Garrison*, 759 F.3d at 1012.

13   The ALJ satisfies this requirement by "setting out a detailed and thorough summary of the facts

14   and conflicting medical evidence, stating [her] interpretation thereof, and making findings." *Id.*

15         Thus, the ALJ is not bound by the conclusions of any particular medical provider.

16   Reviewing courts have upheld the rejection of treating physicians' opinions due to conflicts

17   between a physician's opinion and clinical findings, treatment notes, claimant's daily activities,

18   and other medical opinions. *See, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008);

19   *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009); *Rollins*, 261 F.3d

20   at 856.   In addition, the ALJ need not accept a medical opinion that "is brief, conclusory, and

21   inadequately supported by clinical findings," *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.

22   2002), or that is "so extreme as to be implausible," *Rollins*, 261 F.3d at 856.

23         The ALJ cites three "specific and legitimate" reasons.   Upon review of the record, the

24   court finds that the first two are also supported by substantial evidence.   First, the ALJ concluded

25   that the limitations described in Dr. Peddu's opinion were inconsistent with the records of

26   plaintiff's mental health treatment at Veterans Affairs medical facilities.   In June 2013 plaintiff

27   presented "with complaints of anxiety and poor sleep, but demonstrated adequate hygiene,

28   constricted affect, fair insight/judgment, and occasional passive suicidal ideations."   (AR 14,

428–37.)  The ALJ observed that Plaintiff's condition remained more or less consistent through at least the fall of 2013, as the later treatment records contain "no acute findings, stable symptoms, and diagnostic impressions of an adjustment disorder and PTSD."  (*Id.* at 15 (citing *id.* at 594–736).)  For example, at a mental status exam on September 18, Dr. Peddu noted that plaintiff was experiencing persistent anxiety and PTSD symptoms but that he denied having suicidal or homicidal thoughts, was "able to manage with the stressors with some difficulty," and was attending PTSD groups and individual therapy.  (*Id.* at 642.)  On October 23, Dr. Peddu described plaintiff as "stressed out but hopeful," with an "okay" mood, goal directed thought process, no suicidal or homicidal thoughts or plans, and fair insight and judgment.  (*Id.* at 625.)

Second, it is readily apparent that Dr. Peddu's conclusions regarding plaintiff's functional abilities diverged from those of Dr. Debattista, the consultative examiner.  (*Id.* at 15.)  Whereas Dr. Peddu found, for example, that plaintiff was seriously limited or precluded in his ability to work with or in proximity to others, to complete a normal workweek, and to accept instructions from supervisors (*id.* at 237–39), Dr. Debattista assessed just mild to moderate impairments for the same general activities  (*id.* at 559).  In addition, Dr. Debattista assigned a GAF score of fifty-five, indicating moderate mental health symptoms.  (*Id.*)  A score of fifty, as Dr. Peddu rated plaintiff, indicates serious symptoms.  Plaintiff's attempt to paint the two opinions as consistent— arguing that both doctors found plaintiff "had limitations in abilities necessary for work performance"—glosses over these significant differences.  (#19 at 2–3.)  Plaintiff may disagree with the ALJ's interpretation of the opinions.  However, where the ALJ's decision is reasonable and supported by substantial evidence, as here, the court will not second guess it.  *Rollins*, 261 F.3d at 857.

The final reason the ALJ offered was that Dr. Peddu's opinion "appeared to be based entirely on the claimant's subjective reporting of symptoms signed by the provider."  (AR 15.)  An ALJ may reject an opinion that is based on a claimant's unreliable self-reporting.  *Tommasetti*, 533 F.3d at 1041.  Here, however, the court agrees with plaintiff that the ALJ's conjecture appears largely speculative.  The ALJ failed to cite to any evidence in the record, and Dr. Peddu's opinion does not note the source of her conclusions.  Even if the ALJ's reasoning is logical, as

defendant argues, it must also have the support of substantial evidence.  (#15 at 6.)  Nevertheless, the ALJ gave other specific, legitimate reasons based on substantial evidence for rejecting Dr. Peddu's opinion, and this renders the error harmless.  *See Stout*, 454 F.3d at 1055.

Plaintiff further asserts that the ALJ should have recontacted Dr. Peddu before rejecting her opinion.  "An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination."  *Bayliss v. Barnhart*, 427. F.3d 1211, 1217 (9th Cir. 2005) (citing 20 C.F.R. § 404.1512(e); *Thomas*, 278 F.3d at 958).  Because Dr. Peddu's opinion was not ambiguous, and because the ALJ found the evidence of record adequate to make a determination regarding plaintiff's disability, no such duty arose.

**F.    The ALJ failed to include all of plaintiff's limitations in the hypothetical posed to the vocational expert.**

Interlaced with his argument in support of Dr. Peddu's medical opinion, plaintiff raises a challenge to the hypothetical the ALJ posed to the vocational expert.  The hypothetical was inadequate, plaintiff contends, because the ALJ neglected to mention one of the functional limitations identified by Dr. Debattista.  (#13 at 14; #19 at 2–3.)  Defendant responds that plaintiff's counsel was present at the hearing and given the opportunity to ask further questions of the vocational expert, and implies that as a consequence there was no error.  (#15 at 7 n.1.)

At the fifth step of the sequential analysis, the Commissioner bears the burden of demonstrating that there are significant jobs available in the national economy which the claimant can perform.  20 C.F.R. § 404.1560(c).  The ALJ can meet this burden by asking a vocational expert about a hypothetical individual who has a set of limitations mirroring those of the claimant.  *Hill*, 698 F.3d at 1161.  To be considered reliable, the hypothetical "must include *all* of the claimant's functional limitations, both physical and mental," that are supported by substantial evidence.  *Thomas*, 278 F.3d at 956 (internal quotation omitted) (emphasis added); *Robbins*, 466 F.3d at 886.  Otherwise, the testimony of the vocational expert "has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  *Hill*, 698 F.3d at 161–62.

Dr. Debattista identified two areas in which plaintiff's functional abilities were moderately impaired: (1) the "ability to relate and interact with coworkers and the public," and (2) the "ability to maintain regular attendance in the work place and perform work activities on a consistent basis." (AR 559.)  In addition, Dr. Debattista described plaintiff's ability to "maintain concentration and attention, persistence and pace" as "mildly impaired." (*Id.*)  The ALJ accorded the opinion partial weight. (*Id.* at 15.)

At the hearing, the ALJ offered the following hypothetical:

> [W]e have a younger individual who is 41 on the alleged onset date, has three years of college, has the [work] background as you have identified in your testimony.  Limited by way of review of the record 3A is limited to lifting 20/10 but can stand, walk, sit, 6/6 of eight.  Therefore, we would say light level of work.  Occasional postural only limited by left, but the limitation on repetitive or constant overhead with the left upper extremity.  In terms of the non-exertional mental limitations 5F page six gives him [sic] can understand, remember, and carry out simple detailed and complex but in terms of the public, supervisors, and coworkers should have limited access on a routine basis.

(AR 51–52.)  In addition, plaintiff's attorney further restricted the hypothetical to describe an individual (1) with a seventy-five to eighty percent production rate, and (2) who was off-task fifteen percent of the work day beyond normal breaks due to stresses in the work environment. (*Id.* at 54–55.)  The vocational expert testified that there were jobs available in the national economy for someone with the limitations described by the ALJ as well as a reduced production rate, but that an individual who was additionally off-task fifteen percent of the work day may not be able to sustain employment. (*Id.*)

Plaintiff's limitations regarding social interaction and concentration are adequately accounted for between the ALJ's initial hypothetical and plaintiff's attorney's additional questions.  Noticeably absent, however, is any mention of plaintiff's ability to maintain regular work attendance.  The ALJ was not required to adopt all the limitations within Dr. Debattista's assessment, *Magallanes v. Bowen*, 881 F.2d 747, 753–54 (9th Cir. 1989), but she may not disregard parts of it without explaining her reasons for doing so, *see Marsh v. Colvin*, 792 F.3d 1170, 1172–73 (9th Cir. 2015).  Dr. Debattista's opinion appears to be supported by the record: state agency medical consultants similarly found plaintiff to be moderately impaired in his "ability to complete a normal workday and workweek without interruptions for psychologically

1   based symptoms." (AR 84.) Moreover, while impaired attendance does not necessarily show that

2   plaintiff is disabled, it is certainly probative of whether plaintiff can perform the jobs that are

3   available in the national economy. Employers are concerned with whether their employees

4   reliably attend work. *Rosin v. Sec. of Health, Ed. & Welfare*, 379 F.2d 189, 195 (9th Cir. 1967).

5   In sum, the hypothetical questions posed by the ALJ and plaintiff's counsel failed to

6   account for all of plaintiff's limitations. In such circumstances, the law is clear that the

7   vocational expert's testimony cannot constitute substantial evidence to support the ALJ's finding

8   of no disability. *Gallant*, 753 F.2d at 1456. As defendant offers no authority for the proposition

9   that a defective hypothetical is salvaged if a claimant's attorney has an opportunity to cross-

10  examine the vocational expert, it makes no difference that plaintiff's attorney did not ask further

11  questions of the vocational expert.

12  **E.      The record warrants remand for further proceedings.**

13  A district court has the discretion to remand for an immediate award for benefits where all

14  three prongs of the credit-as-true test are met. *Garrison*, 759 F.3d at 1020. Under that test, (1)

15  the record must be fully developed, such that further administrative proceedings would serve no

16  purpose; (2) the ALJ must have failed to articulate legally sufficient reasons for rejecting medical

17  opinion evidence or claimant's testimony; and (3) if on remand the rejected evidence were

18  credited as true, the ALJ would be required to find the claimant disabled. *Id.* Even in the "rare

19  circumstances" where the test is satisfied, a court may find that remand for further proceedings is

20  appropriate. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

21  As noted above, the ALJ failed to address the entirety of Dr. Debattista's medical opinion,

22  and failed to properly consider all the limitations contained therein when questioning the

23  vocational expert. Nevertheless, the record raises substantial doubts as to whether plaintiff is

24  disabled. Because there are outstanding issues that must be resolved before a final disability

25  determination can be made, it is appropriate to remand this case for further proceedings.

26  *Treichler*, 775 F.3d at 1105.

27

28

1

## IV.    CONCLUSION

2        The ALJ did not err in her assessment of plaintiff's severe impairments, the effects of

3   plaintiff's medication, or Dr. Peddu's medical opinion.  For the foregoing reasons, however, the

4   court concludes that the ALJ's failure to discuss each of the functional limitations identified by

5   Dr. Debattista led to legal error at step five.  The court recommends that plaintiff's motion for

6   remand (#13) be granted and that defendant's cross-motion to affirm (#15) be denied.

7        1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file

8   specific written objections to this Report and Recommendation within fourteen days of receipt.

9   These objections should be entitled "Objections to Magistrate Judge's Report and

10  Recommendation" and should be accompanied by points and authorities for consideration by the

11  District Court.

12       2.    This Report and Recommendation is not an appealable order and any notice of

13  appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's

14  judgment.

## V.    RECOMMENDATION

16       **IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand (#13) be

17  **GRANTED** and defendant's cross-motion to affirm (# 15) be **DENIED**;

18       **IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close

19  this case.

20

21  **DATED**: November 16, 2015.

22                                        **UNITED STATES MAGISTRATE JUDGE**

23

24

25

26

27

28

16